UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- X
                                                        :
RON MEYER,                                              :
                                                        :
                                   Plaintiff,           :
                                                        :
                - against -                             :
                                                        :
                                                        :
SUSAN SEIDEL et al.,                                    :
                                                        :
                                   Defendants.          :
                                                        :
------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/16/2021__

20-CV-3536 (VSB)

**OPINION & ORDER**

<u>Appearances</u>:

Bertram Fields
Greenberg Glusker Fields Claman & Machtinger LLP
Los Angeles, CA
*Counsel for Plaintiff*

Judd B. Grossman
Grossman LLP
New York, NY
*Counsel for Defendants Susan Seidel and Susan Seidel Inc.*

David A. Fleissig
Dontzin Nagy & Fleissig LLP
New York, NY
*Counsel for Defendant Jaime Frankfurt*

David R. Baum
Baum LLC
New York, NY
*Counsel for Non-Party Julian Weissman*

<u>VERNON S. BRODERICK, United States District Judge</u>:

Plaintiff Ron Meyer ("Plaintiff" or "Meyer") brings this action for fraud, breach of

warranty, negligent misrepresentation, and rescission against Defendants Susan Seidel

("Seidel"), Susan Seidel Inc. ("Seidel Inc.," and together with "Seidel," the "Seidel

Defendants"), Jaime Frankfurt ("Frankfurt"), and Does 1 through 5 (the "Unnamed Defendants," and, together with the Seidel Defendants and Frankfurt, "Defendants").  Before me are the motions to dismiss filed by Frankfurt, (Doc. 44), and the Seidel Defendants, (Doc. 47), as well as the motion to quash a subpoena filed by non-party Julian Weissman ("Weissman"), (Doc. 58). Because Plaintiff's causes of action are time-barred, Defendants' motions to dismiss are GRANTED.  Although Plaintiff requests an opportunity to amend his complaint, because I find that any effort to amend would be futile, Plaintiff's request is DENIED, and the complaint is DISMISSED WITH PREJUDICE.  Given that this Opinion & Order dismisses this case with prejudice, Weissman's motion to quash is DENIED as moot.

## I.   **Factual Background**[1]

Plaintiff is a resident of Los Angeles, California.  (Compl. ¶ 1.)[2]  Seidel is a New York resident who is an art dealer who transacts substantial business in California.  (*Id.* ¶ 2.)  Seidel wholly owns and controls the entity Seidel Inc.  (*Id.*)  Frankfurt[3] is also an art dealer, (*id.*), who I find has been a New York resident at least during the entirety of this litigation.  The identities of the unnamed Defendants are unknown to Plaintiff, but each Defendant played a role in the events central to this litigation.  (*Id.* ¶ 3.)

On or around March 1, 2001, Frankfurt recommended Seidel to Plaintiff, representing that Seidel was a reliable and expert art dealer who was looking to sell a painting (the "Painting") made by famous artist Mark Rothko ("Rothko").  (*Id.* ¶ 4.)  Plaintiff was under the

---

[1] The facts set forth herein are taken from the allegations contained in the Complaint.  (Doc. 1-1.)  I assume Plaintiff's allegations in the Complaint to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Compl." refers to Plaintiff's Complaint filed on October 15, 2019 in the Superior Court of California, County of Los Angeles.  (Doc. 1-1.)

[3] Frankfurt is named in Plaintiff's Complaint as "Frankfort," but his opposition memorandum of law indicates that this was a typographical error.  (*See* Doc. 45, at 24.)

impression that a different art dealer owned the Painting and consigned it to Seidel for sale.  (*Id.*)

Seidel offered to sell the Painting to Plaintiff.  (*Id.* ¶ 5.)  When she did, Seidel made several misrepresentations to Plaintiff, including that the Painting was:

- Made by Rothko, when it was in fact a forgery;
- To be included in the Catalogue Raisonné of Rothko's works, indicating that it was considered a genuine work of Rothko;
- Signed by Rothko; and
- Acquired directly from Rothko by the seller's family.

(*Id.* ¶ 6.)  On or around March 1, 2001, Plaintiff, acting in reliance on Seidel's representations, agreed to purchase the Painting for $900,000, plus a 5% commission of $45,000.  (*Id.* ¶ 8.) Seidel sent an invoice to Plaintiff that included at least some of the misrepresentations listed above, and promised delivery of the Painting.  (*Id.*)  Sometime during March 2001, Seidel delivered the Painting to Plaintiff in Los Angeles, where he received it and paid Seidel $945,000. (*Id.* ¶ 9.)  The Painting has remained in Plaintiff's Los Angeles home since then.  (*Id.*)

In January 2019, Plaintiff learned that the Painting was (1) a forgery; (2) never included in Rothko's Catalogue Raisonné; (3) never owned by, signed by, seen by, or acquired from Rothko or his family; and (4) essentially worthless.  (*Id.* ¶ 11.)  If the misrepresentations that Seidel told Plaintiff were true, the Painting would currently be worth at least $10 million today. (*Id.* ¶ 13.)

## II.  <u>Procedural History</u>

On October 15, 2019, Plaintiff filed the Complaint in the Superior Court of California, County of Los Angeles, alleging four causes of action:  (1) fraud, alleged against all Defendants; (2) breach of warranty, alleged against the Seidel Defendants and the unnamed Defendants; (3) negligent misrepresentation against all Defendants; and (4) rescission, alleged against the Seidel Defendants and the unnamed Defendants.  (Compl.)  On November 14, 2019, the Seidel

Defendants filed a notice of removal on grounds of diversity jurisdiction.  (Doc. 1.)  On November 15, 2019, this case was transferred to the United States District Court for the Central District of California.  (Doc. 5.)  On May 5, 2020, District Court Judge Dolly M. Gee ordered that this case be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), (Doc. 38), which was effectuated the following day, (Doc. 39), and the case was assigned to me, (Doc. 40).

On July 14, 2020, Frankfurt, (Docs. 44–46), and the Seidel Defendants, (Docs. 47–49), filed separate motions to dismiss, each accompanied with a memorandum of law, a declaration, and exhibits.  Plaintiff filed separate responses to each motion to dismiss on September 15, 2020.  (Docs. 50–51.)  On October 1, 2020, both Frankfurt, (Doc. 54), and the Seidel Defendants, (Doc. 55), filed their reply memorandum of law.

On May 21, 2021, Weissman filed a letter motion to quash a subpoena issued by Seidel.  (Doc. 58.)  The Seidel Defendants filed a letter response on May 25, 2021, (Doc. 59), and Weissman filed a second letter in support of his motion a day later, (Doc. 60).

On July 14, 2021, I directed the parties to submit a filing detailing the parties' respective positions on Frankfurt's citizenship at the time the lawsuit was filed, his current citizenship, his citizenship at all times between the filing of the lawsuit and today, and the date Frankfurt moved from California to New York, if at all.  (Doc. 61.)  Frankfurt submitted a responsive filing on July 19, 2021, indicating his position and those of the other parties.  (Doc. 62.)

III.    **Legal Standards**

A.  *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*  A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

"Rule 12(b)(6) provides the most appropriate legal basis for a motion to dismiss on

statute of limitations grounds." *La Russo v. St. George's Univ. Sch. of Med*, 936 F. Supp. 2d

288, 297 (S.D.N.Y. 2013).  "A court accordingly may dismiss a claim on statute-of-limitations

grounds at the pleadings stage if the complaint clearly shows the claim is out of time." *Whiteside*

*v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (internal quotation marks omitted).

### B. *Rule 9(b)*

Allegations of fraud "are subject to a heightened pleading standard" pursuant to Federal

Rule of Civil Procedure Rule 9(b), and must be pled "with particularity." *Nakahata v. New*

*York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013); Fed. R. Civ. P. 9(b).

Accordingly, such allegations must "(1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent." *Id.* at 197–198 (internal quotation marks omitted).

"In addition, the plaintiff must allege facts that give rise to a *strong* inference of fraudulent

intent." *Id.* at 198 (emphasis in original) (internal quotation marks omitted).

### IV.   Discussion

### A. *Subject-Matter Jurisdiction*

This case was removed to federal court on the basis of diversity jurisdiction.  (Doc. 1 ¶¶

5, 7.)  In order to establish diversity jurisdiction, the matter in controversy must exceed the sum

of $75,000 and there must be complete diversity among the parties.  28 U.S.C. § 1332(a)(1).

When subject-matter jurisdiction is predicated on diversity jurisdiction, "complete diversity of all

parties is an absolute, bright-line prerequisite to federal subject matter jurisdiction." *Pa. Pub.*

*Sch. Emples. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 119 (2d Cir. 2019)  It is "well-

settled doctrine that a court must satisfy itself that it has subject matter jurisdiction and may at

any time in the course of litigation consider whether such jurisdiction exists." *Mitskovski v.*

*Buffalo & Fort Erie Pub. Bridge Auth.*, 435 F.3d 127, 133 (2d Cir. 2006).

Here, the parties agree that Plaintiff is a California resident and that the Seidel Defendants are New York residents.  However, the pleadings left some ambiguity concerning Frankfurt's citizenship—an important issue because, if Frankfurt were a California citizen, that would destroy complete diversity and thus I would not have subject-matter jurisdiction over this litigation.  Plaintiff's Complaint alleged that Frankfurt "was and is a resident of California." (Compl. ¶ 2.)  In subsequent briefing to the Central District of California, where this case was first removed, Plaintiff stated that Frankfurt "at all relevant times" was "a California resident," and acknowledged that the Seidel Defendants removed the case "apparently based on the assertion that Frankfurt, although a citizen of California at the time of all the events in issue, had subsequently moved to New York."  (Doc. 33, at 3, 5.)  Plaintiff's filings did not make clear Plaintiff's position on Frankfurt's citizenship either at the time he brought this lawsuit or today. Defendants, on the other hand, argued that "Frankfurt is a New York citizen" and has been "since 2012," predating the time of this lawsuit.  (Doc. 1 ¶¶ 11–12.)  In another filing to the Central District of California, Frankfurt testified that he is a "resident of New York, New York, and [has] lived in the State of New York since at least 2003."  (Doc. 30-2 ¶ 2.)

In light of the uncertainty created by these representations, I directed the parties to submit a letter detailing their respective positions concerning Frankfurt's citizenship when this case was filed, and at all times between the filing of the lawsuit to the present.  (Doc. 61.)  In the parties' response, Frankfurt confirmed that he moved from California to New York in or around 2003 and has been a New York citizen ever since, including when Plaintiff filed his Complaint and at all times since.  (Doc. 62.)  The Seidel Defendants indicated that they agreed with Frankfurt's position, and Plaintiff stated that he had "no basis to either confirm or refute Frankfurt's

position." (*Id.*)

Given Frankfurt's consistent representations that he was a New York citizen at the time the Complaint was filed and now, and given that Plaintiff has never argued that Frankfurt was a California citizen during that time, I find that Frankfurt was a New York citizen when this action was filed and at all times since, and therefore that there is diversity jurisdiction here because the parties are completely diverse.

### B.  *Choice of Law*

Plaintiff argues that I should apply California law when deciding this motion, (Doc. 50, at 6; Doc. 51, at 5), while Frankfurt, (Doc. 45, at 8), and the Seidel Defendants, (Doc. 48, at 5 n.4), argue that New York law should apply.  "A federal court sitting in diversity applies the choice-of-law principles of the state in which it sits." *First Hill Partners, LLC v. Bluecrest Capital Mgmt.*, 52 F. Supp. 3d 625, 632 (S.D.N.Y. 2014).  Given that diversity is the basis for subject-matter jurisdiction in this case, (*see* Doc. 1 ¶¶ 5, 7), I will apply New York's choice-of-law principles.  Under New York's choice-of-law rules, "the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998).  "Where there is no actual conflict, a choice-of-law analysis is unnecessary and New York law will apply." *Winter v. Am. Inst. Of Med. Scis. & Educ.*, 242 F. Supp. 3d 206, 218 (S.D.N.Y. 2017).  "However, if the court finds an actual conflict in the applicable law of each jurisdiction, the court embarks on a choice-of-law analysis." *First Hill Partners, LLC*, 52 F. Supp. 3d at 633.

In order to determine whether an actual conflict exists, courts must determine whether "the applicable law from each jurisdiction provides different substantive rules" that are "relevant to the issue at hand" and which "have a significant possible effect on the outcome of the trial."

*Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 331 (2d Cir. 2005) (internal

quotation marks omitted).  "This does not imply, however, that before embarking on a choice-of-

law analysis a court must apply the relevant substantive rules of each jurisdiction to the facts of

the case and determine what the various results would be and whether they would differ."  *Id.* at

331–32.

I find that there is no actual conflict between New York and California laws at issue here

because there are no meaningful differences as applied to any of the four claims here—both with

regard to the statute of limitations and the elements of the claims—as well as for equitable

tolling.  First, for Plaintiff's fraud claim, under New York law, a claim must be brought within

"the greater of six years from the date the cause of action accrued or two years from the time the

plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it," *Aviles*

*v. S&P Global, Inc.*, 380 F. Supp. 3d 221, 275 (S.D.N.Y. 2019) (quoting N.Y. C.P.L.R. §

213(8)), while under California law, a claim must be brought within three years after "the

discovery, by the aggrieved party, of the facts constituting the fraud or mistake," Cal. Civ. Proc.

Code § 338(d).  Although California's statute "does not expressly provide that the claim will

accrue based upon either actual or inquiry notice of the claimant, California courts have long

construed it in such a fashion."  *Krolikowski v. San Diego City Emples.' Ret. Sys.*, 234 Cal. Rptr.

3d 499, 518 (Cal. Ct. App. 2018) (citation omitted); *see also id.* at 518–19 ("As our Supreme

Court has long held, under Code of Civil Procedure section 338, subdivision (d), a plaintiff must

. . . establish[] facts showing that he or she was not negligent in failing to make the discovery

sooner and that he or she had no actual or presumptive knowledge of facts sufficient to put him

or her on inquiry.") (internal quotation marks omitted); *Sharp v. Nationstar Mortgage, LLC*, 701

F. App'x 596, 597 (9th Cir. 2017) (noting statute of limitations set out in § 338(d) begins running

when plaintiff has "notice sufficient to prompt a reasonable person to inquire regarding any asserted misrepresentation").  Defendants allege, and I find, as described *infra*, that Plaintiff had inquiry notice that the Painting might be a forgery in 2011, a finding that therefore bars Plaintiff's fraud claim under both California and New York law.  Further, the elements for fraud under both states' laws are identical:  (1) a false statement or material omission, (2) Defendant's knowledge of falsity, (3) Defendant's intent to defraud, (4) justifiable reliance by the Plaintiff, and (5) resulting injury to the Plaintiff.  *Compare Small v. Fritz Cos., Inc.*, 65 P.3d 1255, 1258 (Cal. 2003), *with Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 491 (N.Y. 2016).

Second, with regard to Plaintiff's breach of warranty claim, the statute of limitations is identical in both states:  four years.  *Compare* Cal. Com. Code § 2-725(1), (2), *and Cardinal Health 301, Inc. v. Tyco Elec. Corp.*, 87 Cal. Rptr. 3d 5, 15–16 (Cal. Ct. App. 2008), *with* N.Y. UCC § 2-725(1), (2), *and De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 317 (S.D.N.Y. 2013). Plaintiff here alleges that Defendants breached express warranties.  (Compl. ¶ 17.)  The elements required to prove a breach of express warranty claim are substantially similar under California and New York law such that there is no significant possible effect on the outcome of trial.[4]

---

[4] Under California law, "[t]he essential elements of a warranty cause of action are:  1. There was a sale of goods; the defendant was the seller, and plaintiff a buyer; 2. Defendant expressly . . . warranted the goods sold; 3. There was a breach of warranty; . . . 4. The breach of warranty caused plaintiff to suffer injury, damage, loss or harm; and 5. The plaintiff gave defendant timely notice of the breach of warranty." *Scott v. Metabolife Internat, Inc.*, 9 Cal. Rptr. 3d 242, 250 (Cal. Ct. App. 2004) (internal quotation marks omitted).  Under New York law, "[t]he material elements for breach of express warranty include (1) a material representation expressly made about the product by defendant, (2) the truthfulness of this representation was relied upon by plaintiff, (3) the product did not live up to the representation and (4) plaintiff suffered damages as a result of a breach of the express warranty." *Flores v. Youm*, No. 21448/16, 133 N.Y.S.3d 786 (Table), at *3 (N.Y. Sup. Ct. Nov. 23, 2020).  The relatively minor differences between these two standards are not dispositive here, given that at least some New York courts also require the buyer to provide "timely notice" to the seller, *Mid Is. LP v. Hess Corp.*, No. 650911/2013, 983 N.Y.S.2d 204 (Table), at *4 (N.Y. Sup. Ct. Dec. 2, 2013), and the Seidel Defendants do not contest that Plaintiff has failed to plead the elements of his breach of warranty claim, (*see* Docs. 48, 55).

Third, as to Plaintiff's negligent misrepresentation claim, New York's statute of limitations is six years, *see* N.Y. C.L.P.R. § 213(1); *Fandy Corp. v. Lung-Fong Chen*, 691 N.Y.S.2d 572, 573 (2d Dep't 1999), while California's is three years after "the discovery, by the aggrieved party, of the facts constituting the fraud or mistake," Cal. Civ. Proc. Code § 338(d). Given my finding, described *infra*, that Plaintiff had sufficient inquiry notice in 2011, there is no meaningful distinction between these statutes of limitations as they pertain to this case. Negligent misrepresentation claims in both California and New York require a plaintiff to establish:  (1) false representations; (2) that a defendant should have known was incorrect; (3) meant to induce reliance; (4) on which plaintiff relied; and (5) resulting damages. *Compare B.L.M. v. Sabo & Deitsch*, 64 Cal. Rptr. 2d 335, 341–42 (Cal. Ct. App. 1997), *with Hydro Inv'rs, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).  Unlike California law, New York law further requires that the Defendant have "a duty, as a result of a special relationship, to give correct information." *Hydro Inv'rs, Inc.*, 227 F.3d at 20.  However, under New York law, "contractual privity" is sufficient to establish a special relationship, *King Cty. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 306–07 (S.D.N.Y. 2012), meaning that Seidel, who sold Plaintiff the Painting, had a duty here.[5]  Further, "a determination of whether a special relationship exists is highly fact-specific and generally not susceptible to resolution at the pleadings stage." *Id*. at 307 (citation omitted).  Therefore, the small difference in the negligent misrepresentation requirements between California and New York is not material here.

Fourth, with regard to Plaintiff's rescission claim, the statute of limitations in California is four years, *see Perez v. Roe 1*, 52 Cal. Rptr. 3d 762, 771 (Cal. Ct. App. 2006) (citing Cal. Civ. Proc. Code § 337); while the statute of limitations in New York is six years, *In re Neidich*, 736

---

[5] Defendants do not appear to dispute Plaintiff's allegation that there was a contract between Plaintiff and the Seidel Defendants.  (Compl. ¶¶ 8, 17.)

N.Y.S.2d 694, 695 (2d Dep't 2002).  Both of these statutes of limitations are shorter than the gap between 2001, when Plaintiff alleges that the contract was made, and 2019, when Plaintiff filed suit.  (Compl.)  The standard for rescission under California law appears somewhat more lenient than the standard under New York law, *compare Marzec v. Pub. Emples.' Ret. Sys.*, 187 Cal. Rptr. 3d 452, 469 (Cal. Ct. App. 2015) (internal quotation marks omitted) (rescission permitted in several circumstances, including where consent obtained through "mistake, . . . duress, menace, fraud, or undue influence"; consideration fails; or upholding contract would prejudice public interest), *with 610 Park 8E LLC v. Best & Co. Constr. Servs.*, No. 651354/2017, 119 N.Y.S.3d 704 (Table), at *3 (N.Y. Sup. Ct. Nov. 15, 2019) (internal quotation marks omitted) (rescission permitted based on "material and willful" breach of contract, mutual mistake, or unilateral mistake in certain circumstances), but not in a way that would have a "significant possible effect" on the outcome here, *Fin. One Pub. Co.*, 414 F.3d at 331.

Finally, while New York and California have different standards for equitable tolling, I do not find that there would be any difference in the outcome depending on which law applies. Under New York law, equitable tolling "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (citation omitted).  "Due diligence on the part of the plaintiff in bringing an action, however, is an essential element of equitable relief" under New York law, and a plaintiff must therefore "articulate any acts by defendants that prevented him from timely commencing suit."  *Miles v. City of N.Y.*, No. 14-CV-9302 (VSB), 2018 WL 3708657, at *8 (S.D.N.Y. Aug. 3, 2018) (internal quotation marks omitted).

Under California law, "equitable tolling today applies when three elements are present:

(1) timely notice, and (2) lack of prejudice, to the defendant, and (3) reasonable and good faith conduct on the part of the plaintiff." *Saint Francis Mem'l Hosp. v. State Dept. of Pub. Health*, 467 P.3d 1033, 1041 (Cal. 2020) (internal quotation marks omitted). This final element—that Plaintiff's conduct must be "reasonable and good faith"—requires that a "plaintiff's conduct must be objectively reasonable and subjectively in good faith." *Id.* at 1043. Thus, for Plaintiff to argue for equitable tolling under California law, he "must demonstrate that [his] late filing was objectively reasonable under the circumstances." *Id.* at 1044. In meeting this standard of objective reasonableness, courts must "focus[] not on a party's intentions or the motives behind a party's actions, but instead on whether that party's actions were fair, proper, and sensible in light of the circumstances." *Id.* Courts have determined that a plaintiff's conduct is not "objectively reasonable" for purposes of satisfying the equitable tolling standard under California law when the plaintiff "fail[s] to exercise due diligence in preserving his legal rights." *U.S. EEOC v. PC Iron, Inc.*, 316 F. Supp. 3d 1221, 1230 (S.D. Cal. 2018) (internal quotation marks omitted); *see also Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) ("Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim."); *Harrell v. City of Gilroy*, No. 17-CV-05204-LHK, 2018 U.S. Dist. LEXIS 136658, at *46–47 (N.D. Cal. Aug. 13, 2018) (noting that plaintiff failed to satisfy the "objectively reasonable" requirement for equitable tolling in part because of her "lack of diligence"); *Villalvaso v. Odwalla, Inc.*, No. 1:10-CV-02369-OWW-MJS, 2011 U.S. Dist. LEXIS 44359, at *13 (E.D. Cal. Apr. 25, 2011) ("Plaintiff did not file in federal court within the limitations period, and did not otherwise exercise due diligence to preserve her legal rights . . . to justify equitable tolling."); *see generally Rodriguez v. Airborne Express*, 265 F.3d 890, 902 n.12 (9th Cir. 2001) ("Diligence is required for the successful invocation of virtually any equitable

doctrine.").

I find that Plaintiff has failed to meet his burden to establish equitable tolling under either standard.  As noted *supra*, and for reasons I discuss in greater detail below, I find that Plaintiff was on sufficient notice to discover his claims with due diligence in 2011, meaning that Plaintiff's delay was not "sensible," "proper," or "fair" and was thus objectively unreasonable under California law.  I also find that Plaintiff has failed to articulate any acts that Defendants did to prevent him from timely bringing suit—including but not limited to the representations Seidel made to Plaintiff in 2011—such that equitable tolling is also improper under New York law.

To summarize, I find no conflict between California and New York laws as they pertain to this litigation, in terms of the elements of Plaintiff's four claims, the statute of limitations related to those claims, and any equitable tolling.  As such, I apply New York law in my analysis.  *See Winter*, 242 F. Supp. 3d at 218.

### C.  *Statute of Limitations*

I find that all four of Plaintiff's claims are untimely, meaning that this suit must be dismissed with prejudice.

#### 1.  **Plaintiff's Fraud Claim**

In determining whether Plaintiff's fraud claim is timely, the key issue is whether or not Plaintiff had sufficient inquiry notice as to the fraud at issue as of 2011.  Plaintiff alleges that he purchased and received the Painting from Seidel in March 2001.  (Compl. ¶¶ 8–9.)  He filed this action in state court in October 2019, more than 18 years after the actions alleged.  (Compl.)  For Plaintiff's fraud claim, the statute of limitation lapses within the greater of six years from when the cause of action arose or two years from the time Plaintiff discovered the fraud or reasonably

could have discovered it. *See* N.Y. C.P.L.R. § 213(8); *Aviles*, 380 F. Supp. 3d at 275.

Under the first option provided in Section 213(8), Plaintiff's claim would lapse in 2007. Plaintiff argues, however, that his fraud claim is timely under the second option because "[u]ntil 2019, [he] did not know and had no reason to know that the painting Seidel sold him was a fake." (Doc. 51, at 14.)  Plaintiff argues that his suit is timely because he filed suit in the same year that he learned his Painting was a forgery.  (*See id.*)  In opposition, Defendants argue Plaintiff with reasonable diligence could have discovered his fraud claim in 2011, which would bar Plaintiff's fraud claim as untimely.  (Doc. 45, at 11; Doc. 48, at 7–10.)

"With respect to inquiry notice, a duty to inquire is triggered by information that relates directly to the misrepresentations and omissions the Plaintiffs later allege in their action against the defendants." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013) (internal quotation marks omitted).  "Whether a plaintiff was placed on inquiry notice is analyzed under an objective standard.  This objective determination can be resolved as a matter of law—it need not be made by a trier of fact." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 427 (2d Cir. 2008) (internal citations omitted).  "Although determining whether a plaintiff had sufficient facts to place her on inquiry notice is often inappropriate for resolution on a motion to dismiss," courts may do so "when a reasonable plaintiff of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers integral to the complaint." *DeSole*, 974 F. Supp. 2d at 296 (internal quotation marks omitted).

I find that Plaintiff could have, with reasonable diligence, discovered facts that would have allowed him to bring his claims in 2011, a finding that is fatal for Plaintiff's fraud claim. There are two principal types of evidence that demonstrate that Plaintiff had inquiry notice in 2011, rendering this claim untimely.  The first piece of evidence is a pre-suit demand letter that

Plaintiff's counsel sent to Seidel on February 28, 2019.[6]  (Doc. 35-1 Ex. 1.)  In this letter,

Plaintiff's counsel represents that, in late 2011, Seidel "called [Plaintiff] and told him about an

investigation into a group of works by Mark Rothko, and that if there was an issue with the

painting, he would receive a call from the FBI."  (*Id.* at 4.)  Plaintiff's counsel further wrote that

"[b]ecause the FBI never contacted [Plaintiff], he . . . continu[ed] to believe that the painting was

authentic."  (*Id.*)

I find that this phone call alone was sufficient to put Plaintiff on inquiry notice in 2011.

By his own counsel's representation, Plaintiff received a phone call from the dealer who sold

him the Painting to inform him that the FBI was investigating several Rothko forgeries, and that

Plaintiff himself might receive a call from the FBI in connection with this investigation.  This

call should suggest to a person acting with reasonable diligence that there was some "probability

that he has been defrauded," which prompts a "duty of inquiry."  *Cruden v. Bank of N.Y.*, 957

F.2d 961, 973 (2d Cir. 1992) (internal quotation marks omitted).

In response, Plaintiff first argues that he "disputes Seidel's version of the call, raising a

triable issue of fact."  (Doc. 51, at 15.)  This perplexing argument seems to ignore the import of

the fact that Plaintiff's counsel himself wrote the letter in question.  In making my finding here, I

do not rely at all on representations made, or different "versions" provided, by Seidel or any

other Defendants.  Instead, I rely on the letter itself, which makes clear, based on Plaintiff's

---

[6] As a preliminary matter, I find that I have the authority to consider this letter in deciding this motion.  I note that neither party appears to challenge using this letter in their papers related to the motion before me.  In any event, in deciding a Rule 12(b)(6) motion, a court may consider "documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit."  *Chambers*, 282 F.3d at 153 (internal quotation marks omitted).  Further, a "court may also take judicial notice of matters of public record, such as pleadings and court orders from prior litigation between the parties."  *Reisner v. Stoller*, 51 F. Supp. 2d 430, 440 (S.D.N.Y. 1999).  Given that Plaintiff's counsel wrote and sent this letter, Plaintiff had "actual notice" of the letter before Defendants filed it in this litigation, thus "dissipat[ing]" any potential risk of prejudice to Plaintiff in my relying on it in this decision. *Chambers*, 282 F.3d at 153 (internal quotation marks omitted).  This is particularly true here, where both Defendants, (Doc. 35-1), and Judge Gee, (Doc. 38, at 4), relied on the letter without objection from Plaintiff in prior briefing before the District Court for the District of Central California.

counsel's representations alone, that Plaintiff was put on notice of an FBI investigation into forged Rothko paintings in 2011.

Plaintiff then argues that several aspects of the phone call, as reported by his attorney, suggested that Plaintiff's painting was not a forgery. For example, Seidel never said that Plaintiff's painting was a forgery, Seidel stated that Plaintiff would get a call from the FBI only "if there was an issue with the painting," and Plaintiff never received such a call. (Doc. 35-1 Ex. 1, at 4.) Assuming this all to be true as I must, inquiry notice still does not require Plaintiff to have decisive or actual knowledge of the full extent of the fraud. Rather, Plaintiff must merely have "enough information to warrant an investigation," *Monterey Bay Military Hous., LLC v. AMBAC Assur. Corp.*, No. 19 Civ. 9193 (PGG), 2021 WL 1226984, at *24 (S.D.N.Y. Mar. 31, 2021) (internal quotation marks omitted); indeed, Plaintiff needed to have only "the probability that he has been defrauded," *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 155 (2d Cir. 2012) (internal quotation marks omitted). I find that Plaintiff learning about an FBI investigation into several forgeries related to Rothko directly from the dealer who sold him the Painting, and with at least some reference to Plaintiff's exact painting—that the FBI might call—is sufficient to meet this standard for inquiry notice.

The second relevant piece of evidence is court filings and news reports concerning a slew of lawsuits brought in this District between 2011–2015 against the now-defunct Knoedler Gallery and connected dealers, alleging that the gallery sold forged works of art, including Rothko paintings. (Doc. 35-1 Ex. 1, at 3–4.) Defendants ask me to take judicial notice of these lawsuits,[7] the earliest of which were filed in 2011, and several contemporaneous news reports

---

[7] The relevant lawsuits in this District are: *Killala Fine Art Limited v. Weissman*, No. 11-cv-702 (filed Feb. 1, 2011); *Lagrange v. Knoedler Gallery, LLC*, No. 11-cv-8757 (filed Dec. 1, 2011); *De Sole v. Knoedler Gallery, LLC.*, No. 12-cv-2313 (filed Mar. 28, 2012) (involving an allegedly forged Rothko painting); *Howard v. Freedman*, No. 12-cv-5263 (filed July 6, 2012); *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, No. 13-cv-0657 (filed Jan.

about these lawsuits and the Knoedler Gallery forgery scandal.[8]  I find that it is proper for me to

take judicial notice of these lawsuits and news reports not for their truth, but in connection with

my analysis of whether they put Plaintiff on sufficient inquiry notice.  *See Weisshaus v. Port*

*Auth. of N.Y. & N.J.*, 814 F. App'x 643, 646 (2d Cir. 2020) (courts "may take judicial notice of []

document[s] filed in another court not for the truth of the matters asserted in the other litigation,

but rather to establish the fact of such litigation and related filings.") (internal quotation marks

omitted); *Staehr*, 547 F.3d at 425 ("[I]t is proper to take judicial notice of the *fact* that press

coverage [or] prior lawsuits . . . contained certain information, without regard to the truth of their

contents, in deciding whether so-called 'storm warnings' were adequate to trigger inquiry

notice") (emphasis in original).

      I further find that these lawsuits and news reports were also sufficient on their own to put

Plaintiff on notice to investigate whether or not his Rothko painting was a forgery.  "[P]ublic

reports and lawsuits of alleged fraud are sufficient to put a plaintiff on inquiry notice of fraud."

*Sejin Precision Indus. Co. v. Citibank, N.A.*, 726 F. App'x 27, 30 (2d Cir. 2018) (internal

quotation marks omitted).  Plaintiff is correct that the lawsuits and news reports do not draw a

clear connection between Defendants and the Knoedler Gallery, and that none of the lawsuits or

reports accuse any of the Defendants here of fraud.  (Doc. 51, at 18–19.)  That said, there are five

---

29, 2013); *White v. Freedman*, No. 13 Civ. 1193 (filed Feb. 21, 2013); *David Mirvish Gallery Limited v. Knoedler Gallery, LLC*, No. 13-cv-1216 (filed Feb. 22, 2013); *The Arthur Taubman Trust v. Knoedler Gallery, LLC*, No. 13-cv-3011 (filed May 3, 2013); *United States v. Glafira Rosales*, No. 13-cr-518 (filed May 20, 2013); *Cohen v. Freedman*, No. 13-cv-8515 (filed Nov. 27, 2013); *Manny Silverman Gallery, Inc. v. Knoedler Gallery, LLC*, No. 13-Civ-8495 (filed Nov. 27, 2013); *Fertitta v. Knoedler Gallery, LLC*, No. 14-cv-2259 (filed Apr. 1, 2014) (involving an allegedly forged Rothko painting).

[8] The relevant news reports are:  Patricia Cohen, *Possible Forging of Modern Art Is Investigated*, N.Y. Times, (Dec. 2, 2011) https://www.nytimes.com/2011/12/03/arts/design/federal-inquiry-into-possible-forging-of-modernist-art.html (Doc. 49-5); Patricia Cohen, *Hearings Shed Light on Pollock Dispute*, N.Y. Times, (Dec. 16, 2011) https://www.nytimes.com/2011/12/17/arts/design/hearings-shed-light-on-dispute-over-authenticity-of-pollocks.html (Doc. 49-3); Michael Shnayerson, *A Question of Provenance*, Vanity Fair, (Apr. 23, 2012) https://www.vanityfair.com/culture/2012/05/knoedler-gallery-forgery-scandal-investigation (Doc. 49-2); Patricia Cohen, *Art Gallery Sued Again Over Sale of Paintings*, N.Y. Times, (Feb. 22, 2013) https://www.nytimes.com/2013/02/23/arts/design/knoedler-company-sued-over-artworks.html (Doc. 49-4).

reasons why these lawsuits and news reports put Plaintiff on inquiry notice.  First, news reports are particularly likely to "trigger inquiry notice" when the reports, as here, "appeared prominently in popular and widely read publications such as" the New York Times and Vanity Fair.  *Staehr*, 547 F.3d at 429.  Second, several of the lawsuits and news reports, including both New York Times reports published in 2011, specifically mention Rothko by name.  (Docs. 49-2, 49-3, 49-5, 49-7.)  Third, Frankfurt is mentioned extensively in the Vanity Fair article published in early 2012.  (Doc. 49-2.)  Fourth, several of the lawsuits and news articles allege that the sellers of the paintings represented to the buyer that they had acquired the artwork directly from the family of the artist in question, including Rothko, (*see* Doc. 49-5; Doc. 49-7 ¶ 55), just as Plaintiff has alleged here, (Compl. ¶ 6(c)).  Fifth, defendants in one of the 2011 lawsuits allegedly represented that the piece of artwork at issue would be included in the artist's Catalogue Raisonné, (Doc. 49-6 ¶ 5), as Plaintiff has also alleged here, (Compl. ¶ 6(b)).  As such, not only were Rothko and Frankfurt explicitly mentioned in these litigation materials and prominent news reports, there were significant factual similarities between the misrepresentations alleged in those lawsuits and reports and the misrepresentations Plaintiff alleges here.

The 2011 call between Seidel and Plaintiff as reported by Plaintiff's counsel, and the Knoedler Gallery lawsuits and accompanying news reports, are each independently sufficient to put Plaintiff on inquiry notice with regard to his fraud claims here.  Taken together, it is not difficult to determine that, in 2011, a person with reasonable diligence could have discovered the fraud at issue here.  This fact is fatal for Plaintiff's fraud claim, which is therefore untimely.

### 2. Plaintiff's Remaining Claims

As noted *supra*, Plaintiff purchased and received the painting in 2001, and did not bring suit until 2019.  Accordingly, Plaintiff's three other claims have long expired:  breach of warranty in March 2005, negligent misrepresentation in March 2007, and rescission in March 2007.  Plaintiff, however, argues that the statute of limitations for these claims should be tolled until 2019, when he first gained actual knowledge of the fraud.  (Doc. 51, at 14.)

To secure equitable tolling, "plaintiff must establish that it was the defendants' subsequent actions—separate from the ones for which they sue—that kept [him] from bringing suit."  *Equinox Gallery Ltd. v. Dorfman*, 306 F. Supp. 3d 560, 575 (S.D.N.Y. 2018) (internal quotation marks omitted).  "[M]ere silence or failure to disclose the wrongdoing is insufficient."  *De Sole*, 974 F. Supp. 2d at 319 (internal quotation marks omitted).  Here, Plaintiff's Complaint fails to allege any communications between Defendants and Plaintiff—other than the 2011 phone call—between the sale of the painting in 2001 and Plaintiff's discovery of the fraud in 2019, let alone any acts that any Defendant took to prevent Plaintiff from timely bringing suit.  *See id.* (noting plaintiff's "complaint does not allege a single communication, interaction, or dealing with" sellers of the painting "following the June 13, 2007 sale.").  Further, as discussed *supra*, Seidel even affirmatively called Plaintiff in 2011 to inform him about the FBI investigation into several Rothko forgeries, and that he might receive a call himself from the FBI.  (Doc. 35-1 Ex. 1.)  To the extent Plaintiff seeks to argue that equitable tolling is justified because of this phone call—an argument that Plaintiff does not explicitly make—this argument must fail because Plaintiff fails to provide any non-conclusory allegations that Seidel knew more detailed or damning information about the FBI investigation and/or Plaintiff's Painting and chose not to disclose it to prevent Plaintiff from bringing suit.  Rather than hiding information from Plaintiff,

Seidel affirmatively told him about the Rothko forgeries—an act that cannot be said to have prevented Plaintiff from bringing suit.

Equitable tolling is therefore inappropriate here, and Plaintiff's three remaining claims—for breach of warranty, negligent misrepresentation, and rescission—are also untimely and must be dismissed.

### D.   *Elements of the Claims*

As noted *supra*, Plaintiff's claims are time-barred, meaning that this lawsuit must be dismissed.  Nevertheless, I will now also evaluate Plaintiff's allegations against Defendants as an alternative justification for dismissal.

### 1.   **Frankfurt**

Plaintiff's two claims against Frankfurt also must be dismissed on the alternative ground that Plaintiff's Complaint does not plausibly allege unlawful behavior against him.  In the Complaint, Plaintiff alleges that Frankfurt had significant experience in the art world and "recommended Seidel to plaintiff, representing to plaintiff that Seidel was a reliable and expert art dealer who had for sale a painting by [Rothko]."  (Compl. ¶¶ 4–5.)  Every other allegation against Frankfurt in the Complaint—that Frankfurt knew that Seidel offered to sell Plaintiff the Painting, that Frankfurt knew Plaintiff could not distinguish between an authentic and forged artwork, that Frankfurt knew Seidel made several misrepresentations about the Painting to Plaintiff and approved of that behavior, and that Frankfurt knew and approved of the sale and delivery of the Painting to Plaintiff, (*id.* ¶¶ 5–9)—is plainly conclusory and thus cannot satisfy the plausibility standard.  *See Iqbal*, 556 U.S. at 678.  Plaintiff essentially confirms this in his opposition brief, rehashing all of the bare-bones allegations against Frankfurt that are nothing more than "formulaic recitation of the elements" of the legal claims against him.  *Id.* at 681

(citation omitted); (*see* Doc. 50, at 5–6).

Plaintiff's allegation that Frankfurt recommended Seidel to Plaintiff as someone who was selling a Rothko painting, on its own, falls well short of satisfying the standard set out in Rule 12(b)(6), let alone the heightened standard by Rule 9(b) for fraud claims.  Plaintiff does not offer any non-conclusory allegations.  For example, Plaintiff does not allege facts that Frankfurt himself made any misrepresentations, that Frankfurt knew or had reason to know that Seidel's painting was a forgery, or that Frankfurt knew that Seidel made representations to Plaintiff that were untrue.  This is fatal for any fraud or negligent misrepresentation claims against Frankfurt, and therefore the claims against him must be dismissed for failure to state a claim.

### 2.  The Seidel Defendants

Setting the statute of limitations issue aside, the Seidel Defendants do not argue that Plaintiff failed to adequately plead his breach of warranty or rescission claims.  (*See* Docs. 48, 55.)  I find that, were it timely filed, Plaintiff's negligent misrepresentation claim against the Seidel Defendants would survive a motion to dismiss.  Plaintiff has plausibly pled that Seidel made several material misrepresentations that Seidel, as the seller and an experienced art dealer, likely should have known were incorrect, (Compl. ¶ 6); that Seidel knew Plaintiff desired such representations in connection with buying an expensive painting; and that Plaintiff relied on those misrepresentations to his detriment, resulting in his purchasing a forged painting.  *See Hydro Inv'rs, Inc.*, 227 F.3d at 20.  The Seidel Defendants do not appear to challenge any of these elements, but instead argue only that Plaintiff and the Seidel Defendants did not have a "special relationship" that created a duty for the Seidel Defendants "to give correct information." *See id*; (*see* Doc. 48, at 19–21).  However, as noted *supra*, not only is "a determination of whether a special relationship exists is highly fact-specific and generally not susceptible to

resolution at the pleadings stage," but also "contractual privity" is sufficient to establish a special

relationship. *King Cty.*, 863 F. Supp. 2d at 306–07; *see also Anschutz Corp. v. Merrill Lynch &*

*Co.*, 690 F.3d 98, 114 (2d Cir. 2012) ("New York strictly limits negligent misrepresentation

claims to situations involving actual privity of contract between the parties or a relationship so

close as to approach that of privity.") (citation omitted).  As the seller, Seidel obviously had a

duty not to make false representations to Plaintiff, the buyer.

I find that Plaintiff failed to plausibly plead the elements of his fraud claim against the

Seidel Defendants.  Put simply, Plaintiff fails to provide any non-conclusory factual allegations

that Seidel knew that the representations she allegedly made to Plaintiff about the Painting were

false.  *See Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d at 491.  As with his allegations

regarding Frankfurt, Plaintiff provides only conclusory allegations that Seidel knew that the

Painting had not been accepted for inclusion for Rothko's Catalogue Raisonné, had not been

signed by Rothko, and had not been acquired from Rothko's family, (Compl. ¶¶ 6–7), detailing

no specific factual allegations to support these claims.  It is insufficient for Plaintiff to argue, by

virtue of Seidel's "expertise and experience" alone, (*id.* ¶ 5), that Seidel "must have known" her

representations were false when she made them, *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F.

Supp. 2d 364, 410 (S.D.N.Y. 2006).  Thus, even if it were timely pled, Plaintiff's fraud claim

against the Seidel Defendants would fail anyway.

### E.  *Request to Amend Complaint and Motion to Quash*

Although Plaintiff requests that he have the opportunity to amend his complaint should I

grant Defendants' motions to dismiss, (Doc. 50, at 23–24; Doc. 51, at 22–23), he does not

provide a copy of an amended complaint or explain how any amendment could possibly cure the

fact that all his claims are time-barred.  Rule 15(a) provides that leave to amend a pleading

23

should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend, however, need not be granted where doing so would be futile.  *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) ("It is well established that leave to amend a complaint need not be granted when amendment would be futile.") (citation omitted); *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F. 3d 723, 728 (2d Cir. 1998) ("[I]t is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile.").  The decision whether to grant leave to amend is within the sound discretion of the District Court.  *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).  I find any amendment from Plaintiff "would be futile because [Plaintiff's] claims would be time-barred even if such an amendment were allowed."  *Becnel v. Deutsche Bank, AG*, 507 F. App'x 71, 73 (2d Cir. 2013); *see also Yu v. City of N.Y.*, 792 F. App'x 117, 119 (2d Cir. 2020) ("Amendment with regard to [plaintiff's] time-barred claims is also futile"); *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 12 (2d Cir. 2014) (finding "district court correctly concluded that amendment would have been futile" because amendment "would not have rendered plaintiffs' claims timely"); *Williams v. N.Y.C. Transit Auth.*, No. 01Civ.10933(KMW)(RLE), 2003 WL 21673560, at *3 (S.D.N.Y. July 14, 2003) (dismissing claims with prejudice where plaintiff's "complaint was filed beyond the 90–day time limit, and he does not qualify for equitable tolling").

Because I am dismissing this case with prejudice, Weissman's motion to quash, (Doc. 58), is denied as moot.  This Opinion & Order dismissing this case eliminates any obligation Weissman had in connection with this litigation.

## V.    <u>Conclusion</u>

The motions to dismiss filed by Frankfurt, (Doc. 44), and the Seidel Defendants, (Doc.

47), are GRANTED, Plaintiff's request to amend is DENIED, and this action is DISMISSED

WITH PREJUDICE.

Weissman's motion to quash a subpoena, (Doc. 58), is DENIED as moot.

The Clerk's office is directed to terminate all open motions—including those at

Documents 44, 47, and 58—and to close this case.

SO ORDERED.

Dated: August 16, 2021
      New York, New York

_Vernon Broderick_

Vernon S. Broderick
United States District Judge